UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DENYSE A. WINNETT,                )
                                  )   No. CV-08-5054-CI
          Plaintiff,              )
                                  )
v.                                )   ORDER GRANTING PLAINTIFF'S
                                  )   MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,                )   AND REMANDING FOR ADDITIONAL
Commissioner of Social            )   PROCEEDINGS PURSUANT TO
Security,                         )   SENTENCE FOUR 42 U.S.C. §
                                  )   405(g)
          Defendant.              )
                                  )
                                  )

    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 15, 18.)  Attorney Rosemary B. Schurman represents Plaintiff; Special Assistant United States Attorney Richard A. Morris represents Defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 9.)  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings.

**JURISDICTION**

    Plaintiff Denyse A. Winnett (Plaintiff) protectively filed for disability insurance benefits (DIB) and for social security income (SSI) on June 28, 2004.  (Tr. 76.)  Plaintiff alleged an onset date of April 12, 2002. (Tr. 76.)  Benefits were denied initially and on reconsideration.  (Tr. 53, 49.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Timothy

Terrill on October 25, 2007. (Tr. 487-534.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 489-520.) The ALJ denied benefits (Tr. 14-24) and the Appeals Council denied review. (Tr. 4.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative record and will, therefore, only be summarized here.

At the time of the hearing, Plaintiff was 51 years old. (Tr. 489.) She graduated from high school six months early. (Tr. 490.) After taking some classes at a community college, Plaintiff attended beauty school and barber school. (Tr. 490.) She worked as a hairdresser and barber for 28 years and has no other work experience. (Tr. 490.)

Plaintiff testified she stopped working due to problems with carpal tunnel syndrome. (Tr. 490.) Plaintiff had carpal tunnel and trigger thumb surgery in May 2002. (Tr. 491.) An accident in September 2002 ripped through scar tissue and caused permanent damage, so Plaintiff could no longer cut hair. (Tr. 491.) She was diagnosed with fibromyalgia and states she aches all over, but the worst pain is in her thighs, legs, back, and the top of her shoulders. (Tr. 494, 511.) Plaintiff also testified she suffers from depression, bad memory, bipolar disorder, and poor concentration. (Tr. 502, 508-09.) She has had carpal tunnel and trigger release surgery on her right hand, but it still falls asleep. (Tr. 513-15.) Plaintiff wore a splint on her left hand and wrist at the hearing and described problems with bad blood flow and swollen nerves in her hand. (Tr. 514.) Plaintiff said she could stand for 15 minutes in one place,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

1    could sit for 30-45 minutes before needing to get up or lay down, and

2    could use her hands for 15-30 minutes.  (Tr. 517-18.)

3        Plaintiff has a history of drug and alcohol abuse.  She used

4    cocaine until 1997, with one additional use admitted in 2003.  (Tr.

5    497.)  She abused alcohol off and on over the years and quit drinking

6    in July 2007.  (Tr. 494.)

7                            **STANDARD OF REVIEW**

8        Congress has provided a limited scope of judicial review of a

9    Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the

10   Commissioner's decision, made through an ALJ, when the determination

11   is not based on legal error and is supported by substantial evidence.

12   *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v.*

13   *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's]

14   determination that a plaintiff is not disabled will be upheld if the

15   findings of fact are supported by substantial evidence." *Delgado v.*

16   *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).

17   Substantial evidence is more than a mere scintilla, *Sorenson v.*

18   *Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a

19   preponderance.  *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir.

20   1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d

21   573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence

22   as a reasonable mind might accept as adequate to support a

23   conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971)

24   (citations omitted).  "[S]uch inferences and conclusions as the

25   [Commissioner] may reasonably draw from the evidence" will also be

26   upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On

27   review, the court considers the record as a whole, not just the

28   evidence supporting the decision of the Commissioner.  *Weetman v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

1  *Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*,

2  648 F.2d 525, 526 (9th Cir. 1980)).

3      It is the role of the trier of fact, not this court, to resolve

4  conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence

5  supports more than one rational interpretation, the court may not

6  substitute its judgment for that of the Commissioner.  *Tackett*, 180

7  F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

8  Nevertheless, a decision supported by substantial evidence will still

9  be set aside if the proper legal standards were not applied in

10  weighing the evidence and making the decision.  *Brawner v. Sec'y of*

11  *Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988).  Thus,

12  if there is substantial evidence to support the administrative

13  findings, or if there is conflicting evidence that will support a

14  finding of either disability or nondisability, the finding of the

15  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

16  1230 (9th Cir. 1987).

17                          **SEQUENTIAL PROCESS**

18      The Social Security Act (the "Act") defines "disability" as the

19  "inability to engage in any substantial gainful activity by reason of

20  any medically determinable physical or mental impairment which can be

21  expected to result in death or which has lasted or can be expected to

22  last for a continuous period of not less than twelve months."  42

23  U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides that

24  a Plaintiff shall be determined to be under a disability only if his

25  impairments are of such severity that Plaintiff is not only unable to

26  do his previous work but cannot, considering Plaintiff's age,

27  education and work experiences, engage in any other substantial

28  gainful work which exists in the national economy.  42 U.S.C. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –4

1  423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability

2  consists of both medical and vocational components.  *Edlund v.*

3  *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

4      The Commissioner has established a five-step sequential

5  evaluation process for determining whether a claimant is disabled.  20

6  C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is

7  engaged in substantial gainful activities.  If the claimant is engaged

8  in substantial gainful activities, benefits are denied.  20 C.F.R. §§

9  404.1520(a)(4)(I), 416.920(a)(4)(I).

10      If the claimant is not engaged in substantial gainful activities,

11  the decision maker proceeds to step two and determines whether the

12  claimant has a medically severe impairment or combination of

13  impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If

14  the claimant does not have a severe impairment or combination of

15  impairments, the disability claim is denied.

16      If the impairment is severe, the evaluation proceeds to the third

17  step, which compares the claimant's impairment with a number of listed

18  impairments acknowledged by the Commissioner to be so severe as to

19  preclude substantial gainful activity.  20 C.F.R. §§

20  404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.

21  1.  If the impairment meets or equals one of the listed impairments,

22  the claimant is conclusively presumed to be disabled.

23      If the impairment is not one conclusively presumed to be

24  disabling, the evaluation proceeds to the fourth step, which

25  determines whether the impairment prevents the claimant from

26  performing work he or she has performed in the past.  If plaintiff is

27  able to perform his or her previous work, the claimant is not

28  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

If drug or alcohol addiction is a material factor contributing to

1  the disability, the ALJ must evaluate which of the current physical
2  and mental limitations would remain if the claimant stopped using
3  drugs or alcohol, then determine whether any or all of the remaining
4  limitations would be disabling.    20 C.F.R. §§ 404.1535(b)(2),
5  416.935(b)(2).

## ALJ'S FINDINGS

7      At step one of the sequential evaluation process, the ALJ found
8  Plaintiff has not engaged in substantial gainful activity since April
9  12, 2002, the alleged onset date.  (Tr. 16.)  At step two, he found
10 Plaintiff has the severe impairments of fibromyalgia, asthma, bipolar
11 disorder, alcohol dependence and bilateral carpal tunnel syndrome.
12 (Tr. 16.) At step three, the ALJ found Plaintiff does not have an
13 impairment or combination of impairments that meets or medically
14 equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P,
15 App. 1.  (Tr. 16.)  The ALJ then determined:

> [T]he claimant has the residual functional capacity to
> perform simple, routine, repetitive work with no public
> interaction and only occasional coworker interaction.  She
> can stand and walk 6 hours out of an 8-hour day and sit
> without limitation.  She can lift 10 pounds.  She can
> occasionally climb, balance, stoop, kneel, crouch and crawl.
> She is limited to occasional fine fingering and grasping.
> She should avoid hazards and should avoid concentrated
> exposure to dust, fumes, odors and gases.

21 (Tr. 17.)  The ALJ found Plaintiff's statements about the intensity,
22 persistence and limiting effects of her symptoms not entirely
23 credible.  (Tr. 19.)  At step four, the ALJ found Plaintiff is unable
24 to perform any past relevant work.  (Tr. 22.)  After considering the
25 testimony of a vocational expert and the Plaintiff's age, education,
26 work experience and residual functional capacity, the ALJ determined
27 that jobs exist in significant numbers in the national economy which
28 Plaintiff can perform.   (Tr. 22-23.)   Thus, the ALJ concluded

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –7

1  Plaintiff has not been under a disability as defined in the Social
2  Security Act from April 12, 2002, through the date of the decision.
3  (Tr. 23.)

4                                **ISSUES**

5      The question is whether the ALJ's decision is supported by
6  substantial evidence and free of legal error. Specifically, Plaintiff
7  asserts the ALJ erred by: (1) accepting the opinions of two physicians
8  but ignoring certain physical limitations they identified; (2)
9  accepting the mental limitations identified by the state agency
10  psychologists but failing to adopt several limitations they
11  identified; (3) rejecting the mental limitations identified by four
12  doctors and one ARNP for reasons unsupported by substantial evidence;
13  (4) improperly rejecting the statement of a lay witness; (5) failing
14  to properly determine Plaintiff's residual functional capacity; and
15  (6) failing to make a proper step five finding. (Ct. Rec. 15 at 23-
16  39.) Defendant asserts the ALJ properly: (1) considered the medical
17  reports and opinions; (2) considered the lay evidence; (3) determined
18  Plaintiff's residual functional capacity; and (4) relied on the
19  vocational expert's testimony.

20                              **DISCUSSION**

21  **A.   Medical Opinions**

22      The ALJ must consider the opinions of acceptable medical sources
23  about the nature and severity of the Plaintiff's impairments and
24  limitations. 20 C.F.R. §§ 404.1527, 416.927; S.S.R. 96-2p; S.S.R. 96-
25  6p. A treating or examining physician's opinion is given more weight
26  than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d
27  587, 592 (9th Cir. 2004). If the treating or examining physician's
28  opinions are not contradicted, they can be rejected only with clear

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

## 1. Physician Opinions

### a. Dr. Sun

Plaintiff argues the ALJ rejected the manipulative limitations assessed by Dr. Sun, and that the ALJ was therefore required to provide specific, legitimate reasons for doing so. (Ct. Rec. 15 at 24-25.) He examined Plaintiff in April 2002 for trigger thumb and carpal tunnel syndrome. (Tr. 182.) Dr. Sun performed carpal tunnel and trigger thumb release surgery in May 2002. (Tr. 182.) Plaintiff had a second trigger finger release surgery in October 2003. (Tr. 182.) In March 2004, Dr. Sun's final evaluation stated, "The patient is still having some problems with repetitive use of her hand due to some thumb range of motion loss as well as weakness. Given this I do not think she would be able to perform repetitive work and most likely would need a 15-minute time limit for repetitive use." (Tr. 183.) The ALJ summarized Dr. Sun's comments about repetitive use and gave significant weight to his opinion. (Tr. 19.)

The ALJ's residual functional capacity determination does not contain the limitation on repetitive use assessed by Dr. Sun, a treating physician whose opinion was given significant weight by the ALJ.  The manipulative limitation in the ALJ's residual functional capacity determination is "occasional fine fingering and grasping." (Tr. 17.) The ALJ did not specifically discuss why he did not include the repetitive use limitation or how he arrived at the wording of the residual functional capacity finding.[1]  While the ALJ is not required to discuss every piece of evidence presented, he is required to explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Dr. Sun is a treating physician and a hand surgeon.  His opinion is probative and the manipulative limitations he assessed should not have been dismissed without explanation.

Defendant asserts the ALJ "reasonably translated Dr. Sun's findings on use of the hand into the RFC limitation to occasional fine fingering and grasping." (Ct. Rec. 19 at 14.)  However, a 15-minute limit on fingering and grasping is not equivalent to occasional fingering and grasping.  Because of the failure to provide specific, legitimate reasons for rejecting Dr. Sun's limitation on repetitive work, the ALJ erred.

**b.  Dr. Ho**

Plaintiff argues the ALJ improperly failed to incorporate lifting

---

[1]"Occasional fine fingering and grasping" is the wording of the fingering and grasping limitation identified by Dr. Ho, an examining physician whose opinion was also given significant weight by the ALJ. (Tr. 301, 19.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

limitations identified by Dr. Ho, an examining physician. (Ct. Rec. 15 at 24.) In April 2005, Dr. Ho examined plaintiff and diagnosed fibromyalgia, history of carpal tunnel syndrome and depression/bipolar disorder. (Tr. 301.) Dr. Ho indicated Plaintiff is limited to standing and walking six hours in an eight-hour day due to fatigue and pain from fibromyalgia, and that she could sit cumulatively six hours in an eight-hour day if needed. (Tr. 301.) Dr. Ho opined, "Lifting and carrying is limited to 10 pounds occasionally, routinely less than 10 pounds due to pain and limitations of both wrists and hands." (Tr. 301.) Dr. Ho further indicated, "Pain and stiffness of the hands and fingers limit fine fingering and grasping to occasionally."

Although the ALJ gave Dr. Ho's opinion significant weight, the residual functional capacity assessment noted Plaintiff "can lift 10 pounds" as the only lifting limitation. (Tr. 17.) This is not as limited as Dr. Ho's opinion that lifting and carrying is limited to 10 pounds occasionally and less than 10 pounds routinely. (Tr. 301.) Despite specifically mentioning Dr. Ho's assessed limitation on lifting and carrying two times in his decision, the ALJ did not discuss or explain why he assessed a milder limitation. (Tr. 19, 22.) The ALJ failed to provide specific, legitimate reasons for ignoring the lifting and carrying restrictions assessed by Dr. Ho, and thus, erred.

However, as Defendant points out, the error is harmless. (Ct. Rec. 19 at 14.) Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless. *See Parra*

*v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).   The vocational expert testified that three jobs exist in the local or national economy consistent with the limitations identified in the ALJ's hypothetical: conveyor line bakery worker, surveillance system monitor, and machine ironer.  (Tr. 522.)  When asked by Plaintiff's counsel, the vocational expert confirmed there is no lifting greater than ten pounds required in any of the three jobs identified.[2]  (Tr. 523.)  Accordingly, even if the ALJ's hypothetical had included the lifting and carrying limitation identified by Dr. Ho, the vocational expert's testimony would not have changed and the outcome would have been the same.

_____

   [2]Plaintiff's counsel asked the vocational expert, "[I]f the lifting and carrying were changed to 10 pounds occasionally and 10 pounds — I'm sorry — 10 pounds frequently and 10 pounds occasionally, would that affect your answer to the first hypothetical question [the ALJ's hypothetical] with regard to other work?"  (Tr. 523.)  The vocational expert said none of the three jobs identified would be affected by the change in hypothetical limitation.  (Tr. 523.)  Counsel apparently intended to ask the vocational expert about Dr. Ho's assessment that lifting and carrying is limited to 10 pounds occasionally and less than 10 pounds routinely because counsel referred the ALJ to Dr. Ho's opinion.  (Tr. 523, 301.)  Any confusion created by the form of the question, however, is resolved by counsel's follow-up question, "There's no lifting greater than 10 pounds on any of them?"  (Tr. 523.)  The vocational expert replied, "That's correct."  (Tr. 523.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

Therefore, the error regarding the lifting limitation is harmless.

Plaintiff argues the ALJ's error is not harmless because the surveillance job requires reasoning at level 3 and, therefore, exceeds the limitation of "simple work." (Ct. Rec 21 at 2.) However, the argument about the reasoning level of the surveillance position is unrelated to the error regarding the lifting and carrying limitation identified by Dr. Ho. Even if Dr. Ho's limitation on lifting and carrying were credited as Plaintiff urges, the vocational expert's testimony established that jobs exist in significant numbers in the national economy which do not require lifting greater than ten pounds.[3] (Tr. 523.) Thus, the error with respect to Dr. Ho's opinion is harmless error.

## 2. Psychologist Opinions

### a. Dr. Morris

Plaintiff argues the ALJ substituted his judgment for the judgment of Dr. Morris, an examining psychologist, and improperly rejected Dr. Morris' opinion. (Ct. Rec. 15 at 28.) Dr. Morris completed a DSHS Psychological/Psychiatric Evaluation form in June 2004. (Ct. Rec. 199-209.) Dr. Morris assessed three moderate limitations, six marked limitations, and one marked-to-severe limitation. (Ct. Rec. 201.) Dr. Morris' opinion is contradicted by Dr. Van Dam, the state agency consulting psychologist, who assessed less severe limitations. (Tr. 279-96.) Therefore, Dr. Morris' opinion may be rejected by the ALJ for specific, legitimate reasons

---

[3]Any error with respect to the mental requirements of positions identified by the vocational expert is addressed by the resolution of the step five issues, *infra*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

supported by substantial evidence in the record. *Fair*, 885 F.2d at 605.

The ALJ gave little weight to Dr. Morris' opinion. (Tr. 20.) According to the ALJ, Dr. Morris' opinions were not supported by his examination findings and Dr. Morris provided no basis for the marked limitations he described. (Tr. 20.) The ALJ listed some of the mental status exam observations and findings recorded by Dr. Morris, primarily those suggesting Plaintiff has little or no impairment. (Tr. 20, 203-04.) However, the ALJ did not address other comments on Dr. Morris' mental status exam form, such as the description of Plaintiff's mood as depressed and anxious, her isolation and lack of friends, and the notes indicating limited concentration, persistence and pace. (Tr. 203-04.) Furthermore, the ALJ ignored the result of the BDI-II which Dr. Morris noted, "Indicates severe depression." (Tr. 205-06.) The ALJ seems to have identified a few facts supporting his conclusion and dismissed the remainder of Dr. Morris' report. The ALJ's explanation for rejecting Dr. Morris' report does not rise to the level of specific, legitimate reasons supported by substantial evidence.

**b.  Dr. Smith**

Plaintiff asserts the ALJ improperly substituted his judgment for that of Dr. Smith, an examining psychologist. (Ct. Rec. 15 at 29-30.) In June 2006, Dr. Smith completed a DSHS Psychological/Psychiatric Evaluation form and attached a narrative report. (Tr. 315-22.) Dr. Smith diagnosed bipolar disorder (depressed), anxiety disorder not otherwise specified, and alcohol abuse. (Tr. 316.) She assessed a marked impairment in Plaintiff's ability to exercise judgment and make decisions and a moderate impairment in the ability to perform routine

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

tasks, the ability to interact appropriately in public contacts, and in the ability to respond appropriately to and tolerate the pressures and expectation of a normal work setting. (Tr. 317.)

The ALJ gave Dr. Smith's opinion little weight. (Tr. 20.) The reason given by the ALJ for rejecting Dr. Smith's opinion is that Dr. Smith's report notes Plaintiff was able to care for her mother and attend to the tasks of daily living. (Tr. 20, 321.) The ALJ concluded Plaintiff's ability to function as a caregiver is not consistent with the limitations described by Dr. Smith. (Tr. 20.)

The ALJ's conclusion about Dr. Smith's report is not supported by substantial evidence. First, as Plaintiff points out, Dr. Smith was aware of Plaintiff's activities as a caregiver when assessing Plaintiff's limitations. (Ct. Rec. 15 at 29-30, Tr. 319-21.) Second, Dr. Smith's report suggests that Plaintiff's caregiving actually contributed to her problems and is, therefore, not evidence of her ability to succeed in an employment setting.[4] (Tr. 320-21.) Third,

---

[4]Dr. Smith notes, "She moved here to care for her father who was ill in August 2005, though this was an extremely difficult change for this woman. She continues to grieve leaving her home and community and to feel dissatisfied with this area." (Tr. 320.) After Plaintiff's father died, Plaintiff's mother broke her leg and asked Plaintiff to care for her. Plaintiff "remained to care for her mother . . . This is a very negative relationship and is depicted as highly stressful for her. She reported increasing depression since her move here." (Tr. 320.) Dr. Smith concluded, "[H]er psychiatric state is likely to improve, especially if her stress level decreases and she is no longer in a toxic situation." (Tr. 321.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

evidence suggests Plaintiff's caregiving efforts, particularly the interpersonal aspects, at times were not successful as Plaintiff suspected her mother called DSHS to report her for not taking good enough care of her.[5]  (Tr. 374.)

Lastly, even if it was proper for the ALJ to conclude Plaintiff's caregiving activities are inconsistent with Dr. Smith's assessment, that reason alone is an insufficient basis to reject Dr. Smith's entire report.  The ALJ is required to provide specific, legitimate reasons supported by substantial evidence in rejecting the opinion of an examining psychologist.  *Fair*, 885 F.2d at 605.  In this case, the one reason cited by the ALJ does not constitute "specific, legitimate reasons" supported by the evidence.  Therefore, the ALJ erred in assigning little weight to Dr. Smith's opinion.

**c.  Dr. Joseph**

Plaintiff asserts the ALJ improperly rejected the opinion of examining psychologist Dr. Joseph.  (Ct. Rec. 15 at 30.)  Dr. Joseph completed a DSHS Psychological/Psychiatric Evaluation form accompanied by a narrative evaluation in March 2007.  (Tr. 334-40.)  He diagnosed bipolar disorder, anxiety disorder not otherwise specified and alcohol abuse.  (Tr. 335.)  Functional limitations assessed by Dr. Joseph include three marked limitations and seven moderate limitations.  (Tr. 336.)  The ALJ gave little weight to Dr. Joseph's report in assessing Plaintiff's "longitudinal functioning."  (Tr. 21.)  The ALJ noted Plaintiff had been drinking heavily until three weeks before Dr.

---

[5]Records from Columbia River Mental Health Services from February to April 2006 mention details about Plaintiff's difficult and at times hostile interpersonal relationship with her mother.  (Tr. 372-79.)

Joseph's examination and that she had only recently stopped drinking. (Tr. 21, 339.)   The ALJ also pointed out that in September 2007, Plaintiff's physician noted no unusual anxiety or evidence of depression.  (Tr. 21, 429.)

It was improper for the ALJ to cite the effects of Plaintiff's drinking as a basis for rejecting Dr. Joseph's report.  By doing so, the ALJ implied the nature or severity of Plaintiff's impairments, as assessed by Dr. Joseph, were impacted by alcohol use.   The ALJ is required to complete the five-step inquiry without regard to effect of alcohol or drug abuse. *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).   Only if there is a finding of disability is the effect of drug and alcohol abuse evaluated. *Id.*   If, after considering all of the evidence, the ALJ determined Plaintiff is disabled, a second inquiry should be done to determine whether alcohol abuse is a factor material to the determination of disability. *See id.* At that point, the effect of alcohol on Plaintiff's "longitudinal functioning" would be relevant and a potentially appropriate reason for rejecting the opinion.

It is unclear, but the ALJ also seems to suggest Dr. Joseph's report deserves less weight because four months later, another physician briefly noted "no unusual anxiety or evidence of depression."  (Tr. 21, 429.)  This is not a legitimate reason for rejecting Dr. Joseph's report.  The physician note cited by the ALJ was from Plaintiff's first visit with Dr. Cole, a medical doctor.  Dr. Cole made no additional notes about Plaintiff's mental state and there is no evidence to suggest she conducted a detailed assessment to establish Plaintiff's mental state.  (Tr. 428-29.)  By contrast, Dr. Joseph, a psychologist, reported detailed information about the basis

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

for his opinion, including the results from an examination for the purpose of assessing Plaintiff's mental state.  (Tr. 338-40.) Accordingly, the ALJ's observation does not rise to the level of a specific, legitimate reason for rejecting the opinion of an examining psychologist.

### d.    Dr. Jarvis

Plaintiff argues the findings of Dr. Jarvis are inconsistent with the ALJ's residual functional capacity determination.  (Ct. Rec. 15 at 31.)  Dr. Jarvis examined Plaintiff and prepared a psychiatric evaluation report in February 2005.  (Tr. 269-74.)  He diagnosed adjustment disorder with mixed anxiety and depressed mood, anxiety disorder not otherwise specified, cognitive order not otherwise specified (probably related to fatigue and chronic pain) and histrionic personality traits.  (Tr. 273.)  In his functional assessment, Dr. Jarvis opined, "Denyse's combination of Axis I anxious, depressive, and cognitive disorders, and Axis II personality traits, with periods of low mood and energy, worry, and difficulty with concentration, would appear to create moderate limitations with respect to employment at this time." (Tr. 274.)  As the ALJ noted, "Dr. Jarvis provides no specific functional limitations."  (Tr. 20.) The ALJ summarized some of Dr. Jarvis' findings, but did not specifically assign weight to the report.  (Tr. 20.)  Instead, the ALJ concluded that Dr. Jarvis' assessment that Plaintiff has moderate employment limitations is not inconsistent with a capacity for "simple . . . work with limited contact with others."  (Tr. 20.)

In disagreeing (Ct. Rec. 15 at 31), Plaintiff cites *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), and an unpublished opinion without further argument.  (Ct. Rec. 15 at 31.)  However, the 3rd

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

Circuit case cited by Plaintiff was distinguished in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  The *Stubbs-Danielson* court noted that in *Ramirez*, medical testimony explicitly identified accommodation of a severe anxiety-related pace deficiency as a significant precondition for claimant's success in maintaining a full-time job.  *Id.* at 1175.  The court concluded, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  *Id.* at 1174.  As Defendant points out, Dr. Jarvis mentioned concentration is moderately limited, and did not mention attention, memory, persistence or pace. (Ct. Rec. 19 at 10, Tr. 274.)  The ALJ adequately explained his interpretation and application of Dr. Jarvis' assessment.  The court cannot conclude the ALJ's determination that Dr. Jarvis' opinion is consistent with the RFC finding is based on legal error.

### e.    Dr. Van Dam

Plaintiff argues the ALJ failed to incorporate findings of Dr. Van Dam, a state agency reviewing psychologist, in the residual functional capacity determination.  (Ct. Rec. 15 at 26.)  Dr. Van Dam completed Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms on March 23, 2005.  (Ct. Rec. 279-96.)  She assessed a number of moderate limitations and one marked limitation in the ability to interact appropriately with the general public.  (Tr. 293-94.)  Dr. Van Dam's narrative remarks indicate, in relevant part, that Plaintiff's attention, concentration, pace and persistence are moderately impaired "at times" and that Plaintiff "would do best in low stress work environment."  (Tr. 294-95.)  The ALJ found Dr. Van Dam's opinion "generally consistent with the treatment record" and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19

1  gave the opinion significant weight.  (Tr. 22.)

2      Plaintiff asserts the ALJ did not incorporate all of Dr. Van

3  Dam's limitations in the residual functional capacity determination or

4  explain why they were rejected. (Ct. Rec. 15 at 26.) The mental

5  limitations included in the residual functional capacity determination

6  are "simple, routine, repetitive work with no public interaction and

7  only occasional coworker interaction." (Tr. 17.)  Defendant argues

8  the mental limitations assessed by the ALJ are a "reasonable

9  conversion" of Dr. Van Dam's opinion because they minimize activities

10 that would cause stress in a work environment or would impact

11 Plaintiff's attention, concentration, pace and persistence. (Ct. Rec.

12 19 at 13.)

13     The explanation of the translation of Dr. Van Dam's opinion to

14 the RFC finding is inadequate.  By assigning significant weight to Dr.

15 Van Dam's opinion, the ALJ indicated the opinion helped formed the

16 basis for his residual functional capacity determination.  The ALJ is

17 required to consider and explain the weight given to state agency

18 consultants, S.S.R. 96-6p, but no specific language is required to

19 reject all or a portion of a report.  *See Magallenes v. Bowen*, 881

20 F.2d 747, 755 (9th Cir. 1989).  The court may draw reasonable

21 inferences from the ALJ's discussion of a particular medical report.

22 *Id.*  Here, however, the ALJ did not comment about Dr. Van Dam's report

23 before or after assigning weight to it.  He did not explain how the

24 Plaintiff's moderate limitation in attention, concentration, pace and

25 persistence and likelihood of doing best in a low stress environment

26 translate into "simple, routine, repetitive work."  In some

27 circumstances, it may be reasonable, as the Defendant urges, to find

28 a "reasonable conversion" of the evidence to the residual functional

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -20

capacity finding.    Here,  however,  the  ALJ's  decision  is  void  of
discussion on the issue.

Furthermore,  the  ALJ  rejected  the  opinion  of  every  examining
psychologist except  for  Dr. Jarvis, who made no specific functional
assessment.    In  appropriate  circumstances,  opinions  from  state  agency
medical  consultants  may  be  entitled  to  greater  weight  than  the
opinions of treating or examining sources.  S.S.R. 96-6p.  The opinion
of a non-examining physician may be accepted as substantial evidence
if it is supported by other evidence in the record and is consistent
with it.    *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995);
*Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).    Case  law
requires not only an opinion from the consulting physician but also
substantial  evidence  (more  than  a  mere  scintilla  but  less  than  a
preponderance),  independent  of  that  opinion  which  supports  the
rejection of contrary conclusions by examining or treating physicians.
*Andrews*, 53 F.3d at 1039.    Here,  the  ALJ  mentioned  the  state  agency
consulting  psychologist  opinion  is  "consistent  with  the  treatment
record," but did not specifically identify anything in the record
consistent with Dr. Van Dam's opinion and inconsistent with the other
psychological opinions.    The ALJ neither explained how Dr. Van Dam's
opinion outweighs the opinions of four examining psychologists, nor
did he identify substantial evidence justifying the greater weight
assigned to Dr. Van Dam's opinion.    Thus, the ALJ erred.

**3.    Other Medical Source Opinion - ARNP Fox**

Treatment  records  for  Vicki  Fox,  ARNP,  begin  in  March  2003,
although Ms. Fox reported attending Plaintiff since 1996.  (Tr. 237,
278.)  In May 2004, Ms. Fox completed a DSHS Physical Evaluation form.
(Tr.  197-98.)    Ms.  Fox  assessed  a  marked  impairment  due  to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -21

fibromyalgia, chronic fatigue and pain, but did not identify specific functional limitations. (Tr. 197.) At a September 2004 office visit, Ms. Fox noted, "It is becoming clearer as the years go on that she is not able to work and she has severe problems with her moods and depression and that she is really struggling financially as well as emotionally, mentally and physically." (Tr. 420.) Ms. Fox completed another DSHS Physical Evaluation form in June 2005. (Tr. 275-78.) She assessed moderate to marked limitations in walking, lifting, handling and carrying due to fibromyalgia. (Tr. 277.) She also assessed moderate to marked limitations in communicating and understanding due to depression. (Tr. 277.) Ms. Fox opined Plaintiff's work level is sedentary. (Tr. 277.)

In December 2005, Ms. Fox completed a document entitled "Supplemental Medical Opinion Regarding DSHS Physical Evaluation Form."[6] (Tr. 313.) Ms. Fox clarified that Plaintiff could do

_____

[6]The form states, "Attached please find a copy of the 'DSHS' Physical Evaluation report you completed, dated February 23, 2005 regarding the above-referenced individual." (Tr. 313.) The attachment is not in the record. Furthermore, the record does not contain a February 23, 2005, DSHS Physical Evaluation form completed by Ms. Fox. The ALJ also referenced the February 23, 2005, assessment (which is not part of the record) in summarizing Ms. Fox's December 2005 supplemental opinion. (Tr. 21.) The December 20, 2005 questionnaire may have been intended to supplement the June 2005 DSHS Physical Evaluation form completed by Ms. Fox, although the record is unclear. Regardless, the contents of the December 2005 questionnaire stand alone as probative evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -22

sedentary work for two to four hours; that she would require the opportunity to alternate between sitting and standing at will; that she would sometimes need to take unscheduled breaks; that she would probably require the opportunity to lie down during the day due to pain, fatigue, or other; and that pain and fatigue would constantly interfere with Plaintiff's need to perform even simple work tasks. (Tr. 313.)  Ms. Fox also opined Plaintiff is likely to be absent from work more than four days per month.  (Tr. 313.)

The ALJ noted Ms. Fox is not an acceptable medical source and gave little weight to her opinions.  By definition, Ms. Fox is an "other source" under the Regulations, whose opinion must be considered by the ALJ and may be rejected for reasons "germane" to the source. 20 C.F.R. § 404.1513(d); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Although an other source cannot establish a medically determinable impairment, the weight given to the opinion must be evaluated after considering certain factors: how long the source has known, and how frequently the source has seen, the individual; how consistent the opinion is with the other evidence; the amount of evidence provided in support of the opinions and how well it is explained; and whether the other source is has a specialty or area of expertise related to the individual's impairment.  S.S.R. 06-03p.

The ALJ rejected Ms. Fox's opinions because her assessment "is not consistent with the opinions of treating and evaluating physicians."  (Tr. 21.)  This is a permissible consideration in assessing an other source opinion.  S.S.R. 06-3p.  The ALJ pointed to

the opinions of Dr. Sun, Dr. Ho, and D. McQuivey, PA-C[7] in support.
(Tr. 21-22.)

Mr. McQuivey diagnosed myalgia, depression/bipolar, trigger
finger, mild degenerative joint disease in right knee and
psychosomatic pain syndrome and rated the severity of all conditions
as mild. (Tr. 327.) He assessed no restrictions in mobility, agility
or flexibility and opined that Plaintiff's overall work level was
light. (Tr. 327.) The ALJ attributed "greater weight" to the opinion
of Mr. McQuivey than to the opinion of Ms. Fox based on the mistaken
understanding that Mr. McQuivey is a medical doctor. (Tr. 22.) Mr.
McQuivey is actually an other source, entitled to the same
consideration as Ms. Fox, not greater consideration. Thus, the ALJ
erred by assigning greater weight to Mr. Mquivey's report.

However, the ALJ reasonably concluded the opinions of Dr. Ho and
Dr. Sun were entitled to greater weight than the opinion of Ms. Fox.
As Plaintiff points out, in certain situations, "an opinion from a
medical source who is not an 'acceptable medical source' may outweigh
the opinion of an 'acceptable medical source.'" S.S.R. 06-3p.
However, the ALJ is ultimately responsible for reviewing the evidence
and resolving conflicts or ambiguities in testimony. *Magallenes v.*

---

[7]A DSHS Physical Evaluation form dated July 21, 2006, was
referenced by the ALJ as authored by "Dr. McQuiney." (Tr. 325-28,
21.) Plaintiff notes and Defendant concedes the author of the report
is actually a physician assistant, not a physician. (Ct. Rec. 15 at
32, Ct. Rec. 19 at 16.) Plaintiff and Defendant reference the author
as "McQuincey," while the court reads the signature as "D. McQuivey"
and uses that name herein.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -24

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Here, the ALJ apparently concluded that the Plaintiff's long relationship with Ms. Fox did not outweigh the opinions of her treating and examining physicians. Although Ms. Fox assessed more severe limitations than did Dr. Ho and Dr. Sun, it was reasonable for the ALJ to give greater weight to the medical doctors.  While it might also have been reasonable to give more weight to Ms. Fox's opinion, the court cannot conclude the ALJ erred by declining to do so.

The ALJ did not discuss, however, Ms. Fox's opinion with respect to Plaintiff's mental limitations.  While there may be germane reasons to discount Ms. Fox's assessment of mental limitations, it is the ALJ, not the court, who must provide them.  *See Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto V. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).  The ALJ mentioned Ms. Fox's notes that Plaintiff "had severe problems with moods and depression," and, "She would have constant interference with attention and concentration." (Tr. 21, 313, 420.)  The ALJ discussed medical evidence inconsistent with Ms. Fox's assessed physical limitations, but made no similar analysis with respect to the mental limitations.  As no germane reasons for rejecting the mental limitations mentioned by Ms. Fox were provided, the ALJ erred.

**B.   Lay Witness**

Plaintiff argues the ALJ improperly rejected the February 2005 Function Report of Plaintiff's friend, Kim Falk.  (Ct. Rec. 15 at 33-34, Tr. 89-97.)  Ms. Falk reported knowing Plaintiff for about twenty years and sees her about two times per month.  (Tr. 89.)  Ms. Falk noted Plaintiff's conditions affect the use of her hands, memory, following instructions, concentration, completing tasks, and getting

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -25

along with others. (Tr. 94.) Ms. Falk wrote, "She cannot hold a job, and is so cronically [sic] sick she is very nearly homeless. I truly believe she is deeply depressed and suffers from cronic [sic] pain." (Tr. 96.) As the ALJ pointed out, Ms. Falk did not report any problems with Plaintiff's lifting, standing, walking or sitting. (Tr. 21.)

The ALJ summarized Ms. Falk's report and found, "The allegations of Ms. Falk are not entirely credible observations of the claimant's general functioning." (Tr. 21.) Ms. Falk is a lay witness and her observations may be rejected by the ALJ for germane reasons. *Dodrill*, 12 F.3d at 919. The ALJ gave two reasons for discounting Ms. Falk's testimony. First, the ALJ observed that Ms. Falk's report was completed during a time when Plaintiff was undergoing medication adjustment. (Tr. 21.) Defendant argues the ALJ implied that Plaintiff's functioning or behavior was disrupted or out of the ordinary in February 2005 due to the medication adjustment, and therefore Ms. Falk's report is not reliable. (Ct. Rec. 19 at 18, Tr. 408-09.) However, Ms. Falk apparently has a long history with Plaintiff and sees her somewhat regularly. (Tr. 89.) Nothing in Ms. Falk's report suggests her observations are limited to February 2005 rather than over the course of her relationship with Plaintiff. Indeed, Ms. Falk noted Plaintiff "was once a vibrant woman." (Tr. 96.) The timing of the medication adjustment is therefore not germane to Ms. Falk's report.

The second reason given by the ALJ for discounting Ms. Falk's opinion is that by August 2005, Plaintiff was functioning well enough to take care of her ill father. (Tr. 21.) It is unclear how Plaintiff's activities six months later reflect on Ms. Falk's February

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -26

2005 observations.  This reason is not germane to Ms. Falk's report.

**C.    Residual Functional Capacity and Step Five**

The court does not reach Plaintiff's additional arguments.  The errors made in evaluating the medical and psychological evidence require a reassessment of Plaintiff's residual functional capacity. On remand, additional or supplemental vocational expert testimony should be obtained as required and to meet the ALJ's affirmative responsibility to ask about any conflict with the DOT pursuant to S.S.R. 00-4p.   To the extent there is a conflict between the vocational expert's testimony and the DOT, the ALJ should explain the resolution of the conflict.  S.S.R. 00-4p.

**D.    Remedy**

The ALJ made errors in evaluating the medical and psychological evidence, primarily by failing to adequately explain and support his findings regarding Plaintiff's treating and examining physicians and psychologists.  There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician.  The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion.  *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding,

but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

In this case, there may be evidence in the record to support the ALJ's findings which is not articulated. Furthermore, even if the court credited the opinions favorable to Plaintiff and determined the Plaintiff is disabled, the finding of alcohol dependence requires an analysis of the impact of drug and alcohol abuse on Plaintiff's condition under *Bustamante*, 262 F.3d 949. Therefore, remand is appropriate.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ should reconsider the medical and psychological opinion evidence and support his findings regarding those opinions with specific, legitimate evidence in the record. Testimony from a medical or psychological expert may be helpful. The ALJ should make a new residual functional capacity finding and obtain additional or supplemental testimony from a vocational expert to meet the requirements of S.S.R. 00-4p and make a proper step five determination. If necessary, the ALJ shall also conduct an analysis of the effects of drug and alcohol abuse under *Bustamante*. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -28

    2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED.**

    3.   An application for attorney fees may be filed by separate motion.

    The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED.**

    DATED July 16, 2009.


                                         S/ CYNTHIA IMBROGNO
                               UNITED STATES MAGISTRATE JUDGE